IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRANDON RAY VAILS,          )<br>                                              )<br>    Plaintiff,                       )<br>                                              )<br>    v.                                  )<br>                                              )<br>ANDREW M. SAUL,              )<br>Commissioner of the Social   )<br>Security Administration,      )<br>                                              )<br>    Defendant.                     ) | Case No. CIV-19-342-RAW-SPS |

## REPORT AND RECOMMENDATION

The claimant Brandon Ray Vails requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons set forth below, the Commissioner's decision should be AFFIRMED.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the

national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step one requires the claimant to establish that he is not engaged in substantial gainful activity. Step two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was thirty years old at the time of the administrative hearing (Tr. 316, 446). He has a high school education and has worked as a sales clerk, stores laborer, stock clerk, short order cook, and laborer (Tr. 322, 339). The claimant alleges that he has been unable to work since an amended onset date of November 1, 2015, due to depression, anxiety, and hyperhidrosis (Tr. 465, 459).

### Procedural History

In November 2017, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434 (Tr. 446-47). His application was denied. ALJ Doug Gabbard, II conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated November 23, 2018 (Tr. 146-55). The Appeals Council denied review, so the ALJ's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. § 404.981.

### Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity ("RFC") to perform work at all exertional levels with the following non-exertional limitations: (i) semi-skilled work (defined as work which requires understanding, remembering, and carrying out some detailed skills, as many as four steps, but does not require more complex work duties); (ii) interpersonal contact with supervisors and co-workers should be on a superficial work basis, *e. g.,* grocery

checker; (iii) work setting where he frequently works alone; and (iv) no contact with the general public (Tr. 52).  The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was other work he could perform in the national economy, *e. g.,* industrial sweeper cleaner, floor waxer, and conveyor feeder offbearer (Tr. 153-55).

### Review

The claimant contends that the ALJ erred by failing to: (i) provide limitations for his moderate difficulties in concentration, persistence, and pace, and (ii) address his objections and rebuttal evidence to the vocational expert's testimony. The undersigned Magistrate Judge finds these contentions unpersuasive for the following reasons.

The ALJ found the claimant's depression, bipolar, anxiety, obsessive, and substance addiction disorders were severe impairments, but that his bone fracture and hyperhidrosis were nonsevere (Tr. 148).  The relevant medical evidence reveals that providers at Carl Albert Community Mental Health Center regularly treated the claimant for depression and anxiety from November 2013 through October 2018 (Tr. 609-43, 716-39, 779-95).  The claimant generally reported that he was doing "better" or "good," but at an appointment with Dr. Teresa Farrow in October 2017, he reported that he was doing "much worse" following the death of his grandfather (Tr. 609-43, 716-39, 779-95).  The claimant's providers consistently indicated the claimant's status was either stable or improving and that his mood was depressed and/or anxious (Tr. 609-43, 716-39, 779-95).  On October 3, 2017, Dr. Farrow wrote a letter wherein she listed his diagnoses and stated that the claimant had been under her care since June 2015, then simply asserted that he was unable to work

"at this time." (Tr. 714). In September 2018, the claimant underwent seven days of inpatient mental health treatment for depression and suicidal ideation with no specific plan (Tr. 768-75). At an outpatient follow-up visit on October 1, 2018, the claimant reported that his medications were working and that he was gradually getting better (Tr. 779-81).

On January 2, 2018, a state agency psychologist completed a "Paragraph B" assessment, indicating, *inter alia*, that the claimant was moderately limited in the ability to concentrate, persist, or maintain pace (Tr. 352). He then completed a Mental RFC Assessment, wherein he found under the category of "sustained concentration and persistence limitations" that the claimant was moderately limited in his ability to carry out detailed instructions but otherwise not significantly limited in that category (Tr. 355). He then concluded that the claimant could perform the mental operations necessary for simple and four-step tasks; maintain adequate concentration, persistence, and pace sufficient for employment; maintain adequate interpersonal relationships to interact and relate well enough to accept directions and feedback from supervisors and peers that are typical of work life; interact appropriately for incidental public contact; and adapt to the mental demands of a work situation subject to the restrictions described above (Tr. 354-56). His findings were adopted on review (Tr. 369-71).

At the administrative hearing, the claimant testified that he was unable to work because he cannot tolerate being around a lot of people (Tr. 327). He further testified that he feels like he is being judged and watched and that he "run[s] for the door" after being inside a store for ten minutes (Tr. 327). The claimant stated that he did much better working by himself and that he felt best at his landscaping job, but still experienced

thoughts that people were looking at him through the windows at that job (Tr. 328). He further indicated that he experiences anxiety and panic attacks about going to work that cause him to see "stars" and impair his breathing (Tr. 330-31).

The ALJ also elicited testimony at the hearing from a VE to determine if there were jobs the claimant could perform with his limitations (Tr. 339-41). The ALJ posited, *inter alia,* a hypothetical in which an individual with the age, education, and work history of the claimant who:

> . . . can perform the full range of semi-skilled work, and by that I mean work which requires understanding, remembering, and carrying out some detailed skills, as many as four step, but does not require doing more complex work duties. Interpersonal contact with supervisors and coworkers should be on a superficial work basis such as a grocery checker, but he will do best in a work setting where he frequently works alone. . . can have no contact with the general public.

(Tr. 339-40). The VE identified three medium, unskilled jobs such a person could perform: (i) industrial sweeper cleaner, DICOT § 389.683-010; (ii) floor waxer, DICOT § 381.687-034; and (iii) conveyor feeder offbearer, DICOT § 921.686-014 (Tr. 340-41). The VE further indicated that the information she provided was consistent with the DOT (Tr. 343).

In his written opinion at step three, the ALJ found the claimant had moderate limitations in understanding, remembering, or applying information; interacting with others; and in his ability to concentrate, persist, or maintain pace (Tr. 149). At step four, the ALJ summarized the claimant's testimony and the medical records. The ALJ noted the claimant's treatment at Carl Albert Community Mental Health Center, and specifically discussed several individual treatment notes with generally positive findings (Tr. 151). In discussing the opinion evidence at step four, the ALJ gave Dr. Farrow's opinion that the

claimant was unable to work little weight because: (i) it concerned an issue reserved to the Commissioner, (ii) she provided no explanation for her opinion, and (iii) her opinion was inconsistent with the treatment notes from Carl Albert Community Mental Health Center (Tr. 152). The ALJ gave the state agency psychologists' opinions partial weight, but further limited the claimant by finding he would do better if he could work alone and have no contact with the general public based on his testimony (Tr. 152). At step five, the ALJ adopted the VE's testimony that the claimant could perform the jobs of industrial sweeper cleaner, floor waxer, and conveyor feeder offbearer, and concluded that her testimony was consistent with the Dictionary of Occupational Titles ("DOT") (Tr. 155).

As to his RFC, the claimant asserts that the ALJ failed to properly account for the moderate limitations in his ability to maintain concentration, persistence, or pace he identified at step three. However, these moderate findings at step three are an attempt at rating the severity of a mental impairment at steps two and three and as such are "not an RFC assessment." Social Security Ruling 96-8p, 1996 WL 374184 at *4. At step four, then, the ALJ can incorporate such limitations "by stating how the claimant was limited in the ability to perform work-related activities." *Smith v. Colvin,* 821 F.3d 1264, 1268-69 (10th Cir. 2016). "This approach is acceptable in [the Tenth Circuit], for we have held in a published opinion that an [ALJ] can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Id.* at 1269 (*citing Vigil v. Colvin,* 805 F.3d 1199, 1204 (10th Cir. 2015) ("[T]he [ALJ] accounted for [the claimant's] moderate concentration, persistence, and pace problems in his [RFC] by limiting [the claimant] to unskilled work.")). *See also Lee v. Colvin,* 631 Fed. Appx. 538, 541 (10th Cir. 2015)

(holding where the ALJ's RFC "included, essentially verbatim, the limitations from the [Mental RFC Assessment]," the ALJ "was not also required to specifically adopt or discuss each individual limitation described in section I."). Thus, the question is not whether the ALJ specifically referenced the limitations from step three in the RFC, but rather, the question is whether the ALJ sufficiently incorporated such limitations when formulating the RFC.

In this case, the ALJ *did* incorporate the relevant limitations into the claimant's RFC when he adopted the limitations from the state reviewing psychologists (and then added further limitations). The psychologists indicated that the claimant had moderate limitations in the ability to concentration, persist, or maintain pace, then clarified further that, as to sustained concentration and persistence limitations, the claimant was moderately limited in the ability to carry out detailed instructions but otherwise not significantly limited (Tr. 352, 355, 367, 369). In his opinion at step four, the ALJ adopted the state psychologists' recommendations to limit the claimant to simple and four-step tasks which involves some detailed skills but no complex work duties, then provided *further limitations* based on the other evidence in the record (Tr. 150, 356, 371). Accordingly, the undersigned Magistrate Judge finds that the ALJ *did* appropriately account for the claimant's mental impairments as to his ability to concentrate, persist, and maintain pace when formulating the RFC.

The claimant next asserts that the ALJ erred at step five in identifying jobs he could perform. Following the administrative hearing, the claimant's hearing representative submitted a post-hearing memorandum wherein he presented several objections to the VE's

testimony (Tr. 579-95). One such objection was that the U.S. Department of Labor and the Bureau of Labor Statistics report current information about how jobs are performed via the Occupational Information Network ("O*NET"), and therefore the Dictionary of Occupational Titles ("DOT") is obsolete. In support of his assertion that the DOT is obsolete, the claimant attached letters dated in 2007 and 2014 from the Office of Occupational Statistics and Employment Projections and the Division Chief of Occupational Employment Projections stating that the information contained in the DOT is based on research that is two to three decades old and that the DOT has been replaced by the O*NET (Tr. 581-84). Accordingly, he suggested that each of the jobs the VE identified exceed his RFC limitations as they are currently performed in the modern economy as indicated by the O*NET (Tr. 579). The ALJ overruled the claimant's objections, finding that he did not cite to any "accurate or persuasive social security law, regulation, POMS, HALLEX, or acquiescence ruling to support any of the arguments he advanced." (Tr. 155).

The claimant now argues on appeal that the ALJ erred in relying on VE testimony at step five without addressing his objections and rebuttal evidence. Here, the ALJ stated he did consider the claimant's "multiple objections to the [VE] testimony" and overruled them finding the representative did not cite to any accurate or persuasive authority to support his arguments (Tr. 155). The undersigned Magistrate Judge first notes that the 2007 and 2014 letters the claimant claims as rebuttal evidence regarding the obsolescence of the DOT were available to his hearing representative well before the hearing and there is no reason to believe his hearing representative did not have access to them at the time of

the hearing. Additionally, the Commissioner has promulgated regulations and rulings explaining that he takes administrative notice of the DOT as a source of reliable job information and still relies on it in making disability determinations. *See* 20 C.F.R. § 404.1566(d)(1) (". . .we will take administrative notice of reliable job information available from various governmental and other publications," such as the DOT.); Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *2 ("In making disability determinations, we rely primarily on the DOT (including its companion publication, the SCO) for information about the requirements of work in the national economy."). Notably, the regulations do not address the O*NET and the ALJ is therefore not required to rely on it in making his disability determination. *See generally* 20 C.F.R. 404.1566(d). Finally, and most persuasively here, the VE did not base her opinions solely on the DOT, rather, she also noted that her opinions included information from Job Browser Pro, county business patterns, the Bureau of Labor Statistics, as well as her own experience (Tr. 341-42). Although regulations and case law "require that an ALJ must investigate and elicit a reasonable explanation for any conflict between the DOT and the VE testimony[,] they do not require the ALJ to resolve conflicts between VE testimony and other vocational publications or information." *Moffit v. Berryhill*, 2018 WL 276770, at *6 (D. Kan. Jan. 3, 2018) (*citing* Soc. Sec. Rul. 00-4p, 2000 WL 1898704, at *4; *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). Thus, the ALJ was entitled to rely on the VE's testimony identifying jobs that an individual with the claimant's limitations could perform and such testimony constitutes substantial evidence supporting the ALJ's finding that the claimant can perform other work.

The undersigned Magistrate Judge finds that the ALJ specifically noted the various relevant findings of the claimant's treating, consultative, and reviewing physicians, *adopted* any limitations suggested in the medical record *and still concluded* that he could perform work. *See Hill v. Astrue*, 289 Fed. Appx. 289, 293 (10th Cir. 2008) ("The ALJ provided an extensive discussion of the medical record and the testimony in support of his RFC finding. We do not require an ALJ to point to 'specific, affirmative, medical evidence on the record as to each requirement of an exertional work level before [he] can determine RFC within that category.'"), *quoting Howard v. Barnhart*, 379 F.3d 945, 949 (10th Cir. 2004). This was "well within the province of the ALJ." *Corber v. Massanari*, 20 Fed. Appx. 816, 822 (10th Cir. 2001) ("The final responsibility for determining RFC rests with the Commissioner, and because the assessment is made based upon all the evidence in the record, not only the relevant medical evidence, it is well within the province of the ALJ."), *citing* 20 C.F.R. §§ 404.1527(e)(2); 404.1546; 404.1545; 416.946. Therefore, the undersigned Magistrate Judge finds that the RFC as well as the ALJ's finding that the claimant was not disabled are supported by substantial evidence. Accordingly, the decision of the Commissioner should be affirmed.

## Conclusion

The undersigned Magistrate Judge hereby PROPOSES a finding by the Court that correct legal standards were applied by the ALJ, and the Commissioner's decision is therefore legally correct. The undersigned Magistrate Judge thus RECOMMENDS that the Court AFFIRM the decision of the Commissioner. Any objections to this Report and Recommendation must be filed within fourteen days. *See* Fed. R. Civ. P. 72(b).

-12-

**DATED** this 4th day of March, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**